**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK CHURCH, | ) | |
| | ) | No. 08 C 47 |
| Plaintiff, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | Mag. Judge Cox |
| AVAYA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT, AVAYA INC.'S, MOTION TO
DISMISS PURSUANT TO F.R.C.P. 12(b)(6)**

**INTRODUCTION**

Mark Church contends that he is entitled to certain commissions for sales he made while working for Avaya Inc., improperly sued as Avaya Corporation, ("Avaya"), and that the failure to pay him these commissions was a breach of contract. Church's Complaint should be dismissed because Church did not have an employment contract with Avaya.

Church attached to his Complaint Avaya's Compensation Plan that provides among other things that Avaya "reserves the right to: (1) amend, change, or cancel the Sales Compensation Plan or any elements of the Plan solely at its discretion." This Court has repeatedly held that compensation plans such as this do not form the basis of an employment contract, and a plaintiff complaining about sales commissions may not recover for breach of contract. For this reason, Plaintiff's Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

From 2001 until January 2007, March Church was a sales employee of Avaya in Avaya's IP Telephony business, selling Avaya's products and services. (Cmplt., ¶¶6, 7., a copy of Plaintiff's Complaint is attached as Exhibit A.) For fiscal year 2005, Church was issued condition sheets that contained sales quota information. (*Id.* ¶11.) At all times during the time period 10/1/04 through 9/30/05, Avaya had in place its FY05 Sales Compensation Plan that applied to Plaintiff. (*Id.* ¶12.)

The Avaya FY05 Sales Compensation Plan (attached as Ex. 5 to Plaintiff's Complaint) provides in pertinent part on Page 2 as follows:

> The FY05 Avaya Inc. ("Avaya") Sales Compensation Plans nor any other manual or policy published or distributed by Avaya is an express or implied contract for continued employment or employment of a specific length of time. Avaya employees are employees-at-will. That means that Avaya employees may terminate their employment at any time and for any reason. That also means that Avaya can terminate its employees' employment at any time and for any reason….

> Avaya reserves the right to: (1) amend, change, or cancel the Sales Compensation Plan or any elements of the Plan solely at its discretion; and (2) revise assigned territories, revenue quotas, reduce, modify, or withhold compensation based on individual/team performance or Avaya determination of special circumstances, with our without prior notice, and either retroactively or prospectively, except in countries where it is a violation of applicable law.

The Avaya FY05 Sales Compensation Plan also provides on Page 2 that the FY05 Avaya Global Sales Compensation Policies form an integral part of the FY05 Sales Compensation Plan. The FY05 Avaya Global Sales Compensation policies are also attached as part of Exhibit 5. On Pg. 2 of the FY05 Avaya Global Sales Compensation Policies, Avaya states in pertinent part as follows:

457218.1

The following policies concern the FY05 Avaya Global Sales Compensation Plans ("Plan") and are effective October 1, 2004 through September 30, 2005.

**AVAYA, INC. ("AVAYA") HAS THE RIGHT OT AMEND, CHANGE, OR CANCEL THE SALES COMPENSATION POLICIES SOLELY AT ITS DISCRETION AND WITHOUT PRIOR NOTICE, EXCEPT IN COUNTRIES WHERE IT IS A VIOLATION OF APPLICABLE LAW.**

Church alleges that he was responsible for large sales to ABN AMRO and its Chicago subsidiary, LaSalle National Bank, and that he should be paid in accordance with the condition sheets issued between October 1, 2004 and September 30, 2005 and Avaya's compensation policy. (*Id.* ¶¶12, 20, 21.) He contends that he is owed $5,000,000 in connection with one sale of $8,000,000 to LaSalle National Bank, a subsidiary of ABN AMRO and another sale to ABN AMRO of $190,000,000. (*Id.* ¶¶22, 25.)

Church asserts that Avaya breached its contract between it and Church and that the contracts included the Global Sales Policies and the Condition Sheets. (*Id.* ¶¶25-27.)

## ARGUMENT

A motion to dismiss brought pursuant to Rule 12(b)(6) must be granted where, as here, "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Lantz v. American Honda Motor Co., Inc.*, 2007 WL 1424614 at *3 (N.D.Ill. May 14, 2007), *citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957). In deciding a motion to dismiss for failure to state a claim, this Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in Plaintiff's favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 770 (7th Cir. 2002). Exhibits attached to a complaint are considered in a motion to dismiss, and where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006).

## PLAINTIFF'S COMPLAINT FAILS TO
## STATE A CLAIM FOR BREACH OF CONTRACT

To succeed on his claim for breach of contract, Plaintiff must prove that he had an enforceable employment contract that granted him the right to the commissions he claims. *Rakos v. Skytel Corp.*, 954 F.Supp. 1234, 1237-38 (N.D.Ill. 1996); *Maxwell v. Vertical Networks, Inc.*, 2005 U.S. Dist. LEXIS 7619, No. 03 C 5715 (N.D.Ill. Mar. 18, 2005). Under Illinois law, a document may form an employment contract only where a three-part test is met: (1) the document contains a promise clear enough to support a reasonable belief that an offer has been made; (2) the document has been disseminated to the employee in a manner that ensures that the employee is aware of the contents and reasonably understands it as an offer; and (3) the employee accepts the offer by commencing or continuing work for the employer. *Maxwell*, at *16; *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 505 N.E.2d 314, 318 (Ill. 1987). The three-part test is evaluated under an objective standard, and the employee's subjective beliefs are not considered. *Maxwell*, at *16; *Rakos*, 954 F.Supp. at 1237-38, *citing Evans v. Gurnee Inns, Inc.*, 268 Ill.App.3d 1098, 645 N.E.2d 556, 559-60 (Ill.App.Ct. 1994)).

Where an employer retains the right to make unilateral modifications to a sales compensation plan at any time, there can be no reasonable belief that an offer was made with regard to the incentive compensation. *Maxell*, at *18, *citing Schultz v. Sally Mae, Inc.*, 1999 U.S. Dist. LEXIS 16870, No. 99 C 3613 (N.D.Ill. Oct. 28, 1999); *Rakos*, 954 F.Supp. at 1237-38; *Grottkau v. Sky Climber, Inc.*, 1995 U.S. Dist. LEXIS 902, No. 93 C 6277 (N.D.Ill. Jan. 26, 1995).

457218.1

The disclaimers contained in Avaya's FY05 Sales Compensation Plan preclude Plaintiff's breach of contract claim. The language of Avaya's Plan is strikingly similar to the language of other plans where courts have held that there was no enforceable employment contract.

For instance, in *Schultz v. Sallie Mae, Inc.*, 1999 U.S.Dist. LEXIS 16870, the Defendant's plans stated that it "reserves the right in its sole discretion" to "modify the ICP and/or any awards paid under the ICP at any time to achieve accuracy, equity or consistency with corporate goals…accommodate changes in market conditions or regulations impacting the profitability or risk of the business…" *Schultz*, at *4-5. The plan in *Schultz* also stated that such modifications may be retroactive and that the company "reserves the right to make prior year adjustments, to amend and/or to terminate the following: each or all of the 19996 plans; any payment category within a plan (at any time during the year)…" *Schultz*, at *5. The court granted the Defendant's motion to dismiss the breach of contract claim, stating "Plaintiff could not reasonably believe she had enforceable rights in a plan that retained broad discretion to modify ICP awards, even retroactively, to 'terminate…each or all of the 1996 plans,' and to modify award calculation 'at any time for any reason'." *Id.* at *8.

Similarly, in *Rakos v. Skytel Corp.*, 954 F.Supp. 1234, 1237 (N.D.Ill. 1996), the court granted summary judgment for the Defendant finding that the sales commission plan did not create an enforceable contract because it did not contain a clear right to bonus commissions. The court held that Defendant's retention of the right to modify or cancel the plan at any time without prior notice disclaimed any possible promissory intent. *Id*. at 1237. The court noted that the plan language stated that "nothing in the plan shall be construed as a guarantee of employment for anyone for any fixed time." *Id*. at 1238. The court found that this was an explicit statement that the plan was not to be considered as a promise of employment to Plaintiff. Further, the plan

stated that the "Vice President of Sales VPS may review unique large orders to determine, at his or her discretion, whether the order represents excessive credit in relation to the effort of the participant. If such determination is made, the company may withhold part of all of the credit for bonus purposes." *Id.* The court found that this statement demonstrated that an employee does not have a right to a bonus under the plan because it could be withheld at the discretion of the Vice President of Sale. *Id*.

In *Maxwell v. Vertical Networks, Inc.*, 2005 U.S. Dist. LEXIS 7619, the Defendant's plan provided, among other things, that it "reserves the right to make any adjustments or revisions to your target incentive compensation, or any element of the plan at any time without prior notice" and that it "reserves the right, in its sole judgment, to withhold or reduce compensation, to a level appropriate or commensurate with your involvement in the quota opportunity." *Maxwell*, at *23. The court held that because the Defendant retained the right to modify or cancel Plaintiff's incentive commissions at any time, Plaintiff could not enforce the terms of the incentive compensation policy and therefore Plaintiff could not prevail on his breach of contract claim. *Id*. at *24-25.

As in the cases discussed above, Avaya expressly reserved its right to amend, change, or cancel the Sales Compensation Plan at its sole discretion at any time. It also plainly stated that the compensation plan was not an employment contract for any length of time. Because this disclaimer proves that Plaintiff did not have an enforceable contract with Avaya, Plaintiff cannot plead a breach of contract claim, and Plaintiff's Complaint must be dismissed with prejudice.

WHEREFORE, for the reasons stated above and in its Motion to Dismiss, Avaya Inc., respectfully requests that this Honorable Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

DATED:  January 9, 2008

Respectfully Submitted,

**AVAYA INC.**


By:___/s/ David M. Holmes_____
        David M. Holmes
        Bryan J. Johnson
        **WILSON, ELSER, MOSKOWITZ,**
        **EDELMAN & DICKER LLP**
        Attorneys for Defendant Avaya Inc.
        120 North LaSalle Street
        Chicago, IL 60602-2412
        (312) 704-0550

457218.1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the 9th day of January, 2008, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and that a true and correct copy was served on the following by the method(s) indicated:

**By Regular Mail**
Ken Merlino
Merlino Law Offices, P.C.
1275 Rosedale
Hoffman Estate, Illinois 60169

**By Regular Mail**
Geroge N. Panagoulias
The Law Offices of George N. Panagoulias, LLC
4061 N. Milwaukee Avenue
Chicago, Illinois 60641

_/s/ David M. Holmes_
David M. Holmes

457218.1